Good morning. I'm David Chomlu. I represent the petitioners in this matter. May it please the Court. I reserve two minutes for rebuttal in this matter, Your Honor. This case is about the journey of the Mata family that started 25 years ago. They are 42 and 44, respectively. They have three United States citizen children. They came into country in 1987. They were placed in removal proceedings in Los Angeles, California, back in 1997. The case was transferred to Portland before the Immigration Court here. They were represented by counsel, and their attorney was supposed to file an application for relief or an immigration pardon called cancellation of removal. That never happened. In fact, that attorney didn't appear telephonically as it was ordered by the Immigration Court. The conduct of the attorney was so egregious that the Immigration Court here in Portland removed the attorney from the case. The Matas were never able to have that application for relief heard. They never had a chance to present to the court that their child suffers from asthma. They never had a chance to present to the court that Mr. Mata had a brain tumor, which he had an operation on. None of those facts were presented to the court. Now, the Immigration Court had the Matas before them without counsel. They went unrepresented. They consulted an attorney who remains unknown for a very short time. And it appears that upon analysis, that attorney had advised them to take voluntary departure. Well, what is voluntary departure? Kennedy. Was that attorney even retained, or they just ran into him and got an off-the-cuff conversation? It appears to have been not a formal engagement, Your Honor, but a brief discussion, a consult, because they had court coming up before the Immigration Court. But then the I.J. said, are you really sure you want to do this? I.J. did a better job of advising them than any other lawyer, right? Your Honor, you know what's telling is that when they took voluntary departure, what's really telling is that they remained in Mexico for a very short time. And then they came back. So understanding what voluntary departure really meant to them, I believe, was unbeknownst to them, because had they really known what they were waiving, they were waiving the 10 years or more they had been here. Didn't the I.J. really try to explain to them what they were doing? But here's the problem, Your Honor. The I.J. was explaining to them what they were doing, but the I.J. didn't inquire about the basis or the prima facie eligibility for cancellation drugs. The I.J. determined that there were cancellation eligible, but he never really dove into the facts of the case. Had the I.J. known that Mr. Mata had suffered a brain tumor, that the child had severe asthma, and they were going back to Mexico City, that it's one of the, I think, one of the most polluted cities in the world, I think part of that waiver, when the I.J. was questioning the Matas, would have involved those issues. It wasn't that, well, cancellation cases could be difficult, could be hard, they're difficult cases to win. Had the I.J. inquired about that, then the I.J. would have set the case for filing out the application. And that's the problem we have. The I.J. was just addressing a very small issue with a waiver, but never went into the facts. Had the I.J. known that, we wouldn't be here. They would have submitted their applications that they would have gone forward. And what they're asking this Court to do is, Your Honor, to give them the chance, this journey that started 25 years ago when they came to this country, is to present their case. We're not asking the Court to grant them their case. They've been trouble-free for that whole 25 years, haven't they? Your Honor, not a crime, not an arrest. Three U.S. citizen kids, the one that still suffers from asthma, they've had no issues. If this was a case where they had criminal history, they had DUI, thefts, and I know this Court gets those, then it would be a different situation. If they were before the Immigration Court right now, not only would they be eligible for cancellation, but they would be eligible for this recent policy under the Obama administration, which is called the Morton Memo. And this Court has directed the government to determine whether the Morton Memo applies in certain cases. Just this year, two published cases. So it's not just cancellation. And if they are eligible for the Morton Memo, they get to file their taxes, get car insurance, renew their driver's license. And the case gets closed. It's basically sleeping until either the administration changes or this policy stays in effect. Sotomayor, have you approached the government about perhaps sending this case to mediation? No, Your Honor. But I was going to bring it to the Court's attention that I did contact the government about the Morton Memo, because it's something that the government is reviewing. But they're only reviewing cases that are pending before the Immigration Court. If they leave the administration or the administrative body, if they're pending before this Court, unfortunately, they're not what they're telling me is that they're not set up to agree to reopen and then administratively close the case. And that's the problem we have. So it is within this Court's power to grant this case, send a case back with directions for the Montas to be able to file their application. Once we're before the Immigration Court, Your Honors, then we can talk about the Morton Memo. We can talk about the cancellation application. They just want a chance to present their case. Well, it would appear to me that the equities are certainly solidly on your side. And they are. And I understand the procedures are not set by the government to review cases that are pending before this Court. But — and I do understand also from DHS, at least from California, from the Los Angeles District Counsel's Office, that they're denying those requests for the Morton Memo, the discretionary reopening now. But it doesn't mean they're not going to do that in the future. But we don't have time. We don't have the future. If they don't get a chance to go back before the Court, they're going to get removed. And they just can't afford that. Well, we've had situations where we sent these cases for — to our mediators. And there have been times when things have worked out in favor of the advocate. And it certainly could happen here. We're — the mottos are not opposed to that. They have tried to work this out. I did contact DHS, not in terms of mediation through the Ninth Circuit, but directly with DHS in trying to see if the Morton Memo could be invoked here. They certainly have the equities. That's not — that's not the issue. But I think the fact that there's an extra step for the government that — that have to go through, which is reopening, and then a remand to the I.G.A., and then administrative closure, they just don't want to do that because they're not set up for that. They're not set up to review cases that have left the administrative body. I don't — I don't know how you know all this. Where are you getting all this from? Your Honor, with 20 years of practice and actually dealing with a case right now with the DHS in Los Angeles regarding the Morton Memo, that's — that's where I get this. And I've contacted DHS in connection with this particular case. Who did you talk to? The attorney who was assigned with this — with this case with the DHS is Jean Emanuel, who's with the chief counsel's office in Portland. She reviewed the case for a Morton Memo. And I understand that at this point, they're not going to join a motion to reopen or administrative closure under the Morton Memo. And I conveyed that to the government's counsel this morning. Well, I'm talking — we're talking about sending the matter to our court mediator. I — I don't know. We're not opposed to that. What I'm saying is if — if that — that is something — That's what Judge Fletcher is saying. Yes. Certainly, going to the mediator for this circuit is an option for us, yes. All right. Thank you. Yeah. Good morning, Your Honors. My name is Michelle Sarko. I'm here representing Attorney General Eric Holder in this matter. In this case, the Board denied the reopening of Petitioner's prior removal proceedings. Petitioners initially apparently came here to the United States back in 1997 — I'm sorry, 1987. And they were first put in removal proceedings somewhere in November 1997. They accepted voluntary departure eventually when they were in proceedings here. They left the country during the voluntary departure period, and they stayed out of the country until a month after the voluntary departure period expired, and then came back illegally instead of remaining outside the country and moving to reopen their case then. That is a very significant fact. You know, look, you know, these people had — they were represented by corrupt notorios and incompetent lawyers who took a lot of money from them. And they're hardworking people. They're not sophisticated people. They have three children. They work hard. They've got certain problems with their health issues. They've never committed an offense. They got caught in a system that we condone. The Justice Department knows that those crooks are out there. We have them in half of our cases, and yet we do nothing about it. So we're — we as a country are complicit in all this, and so is the Justice Department. So we've got to do something about this. Respectfully, Your Honor — And you can't hold these people to all these fine technicalities. They don't understand really what's going on. They put their faith in a system that they know very little, if anything, about. And here they went to some notorio who filled something out, and all of a sudden, they're asking for political asylum. Well, we all know what that means. That means that they're going to be called to the attention of the authorities. And they're going to have big problems. And all this is brought about by some notorio that we know exists because they're crawling all over the walls of the immigration courts. And the immigration judges know about it, the Justice Department knows, the Attorney General knows about them, probably the President knows about them. So we're part of this mess, and we have to figure out a way to help these people. Respectfully, Your Honor — How would you go about helping them? What would you do if you were their lawyer? In this case, I believe the immigration judge bent over backward and explained to them their rights to an attorney. He gave them a list of attorneys when they came to Portland. Yeah, but — And he explained the procedure. You think they really understood what was going on? I think he gave them every opportunity, and that they said that they understood. He gave them the application to fill out. He said, you appear to be eligible. They followed other advice from people that they trusted, too, right? It took big money from them. The very last advice, apparently, that they say they got was they went to — they say they went to an attorney. They did not hire the attorney. They took advice and a 10-minute consultation from an attorney to take voluntary departure. The immigration judge said, well, when they — that was revealed, said, well, I don't know, you seem to be eligible for — to apply for cancellation. Whether your case is ultimately going to be resolved in your favor, I don't know. But you have the ability, you can file this application. Do you understand that if you take voluntary departure, you're waiving your opportunity to let me decide your case? They said yes. It would look to me like if anybody was eligible for cancellation, these people were. And they chose not to apply. They chose to take voluntary departure. That's the word. They were given all the information that any reasonable person would be given. Here you have the application. You can file. You appear to be eligible. Do you understand that if you take voluntary departure, you're waiving that right, you don't have the right to appeal? They said yes. The immigration judge, they could have — you know, they're overburdened, aren't they? Some are. But this judge seemed to take all the steps needed to give them adequate knowledge to make that decision. Yeah, there's some nice people there in that court. But the system is, all the way through, is not conducive to producing a just result. So what are your suggestions now to help them out? As I believe the Court should proceed and make the determination in this case, if Petitioners after that determination want to ask DHS — You're an expert on immigration law. I'm explaining — I mean, you work for the Justice Department. Yes. And they're a public service organization. Right. And after the Court — Tell us what you would do. I'm telling you. If after the Court makes its decision they want to ask for discretion from DHS in enforcing that order, they can ask for deferred removal from DHS at that point. I can barely hear you, and I've got hearing aids on. I'm sorry, Your Honor. Let me speak up a little bit. If after the Court enters its decision, if they rule against them, then they can still ask for DHS to, as a matter of discretion, defer enforced departure. They can remain here if that's granted under that provision. In the — they can — I guess he has gone to DHS and asked, under the Morton memo, whether DHS would be interested in moving their open. I have not talked to them about this. Apparently, he has, and they have declined to do so. When I got the case, I did review the Morton memo. It appeared that they didn't qualify because they had illegally reentered the United States, and that's one of the provisions in the Morton memo that — that they would consider against them in favorably exercising the Morton memo, prosecutorial discretion. Would you be amenable to our sending this to the mediator? I — you know, if the Court does that, they can, but I don't know that anything is going to be resolved by that, because I think, legally, they don't have a case. But, you know, if the Court wants to do that, we can explore if the mediator has some ideas. I don't think that, in this case, they legally have a way to stand up. Here, we have a situation where the petitioner has, apparently, a brain tumor. We have people who have lived here for many years, ignorant of our laws, three citizen children. It would seem that just all of the sense of equity and decency would suggest that there should be relief for these people. Perhaps they would have had better opportunities if they had not chosen to reenter illegally and pursued reopening from outside of the United States or, you know, not taken the voluntary departure and continue with their case. I don't really see, legally, what can be — what can happen. I guess the only possibility is I could go back to DHS and ask them under the Morton memo. If we send it back for mediation, there's always a chance that we'll have a situation like measure for measure where a judge or the person insisting upon the letter of the law and mediation probably won't work, right? I don't think that mediation would work. The only possibility that I see in this case is if DHS elects to exercise prosecutorial discretion in their case and hold their case. On the other hand, if we reverse and recite the equities here and remand for consideration of equitable tolling, and then it's — the ball is firmly back in the court, is it not? I — well, the board did not reach the issue of equitable tolling, but I think on the other issues that it did reach, it is correct in that on those issues, they're dispositive and that the case should be upheld. Well, you know, as my former law partner from New Orleans used to say, where there's trial, there's hope. Does the Court have any other questions? Okay. Then I'll rest in our briefs. Thank you. Am I correct that what you would really like most of all is to — for this to be remanded with instructions to address equitable tolling? Yes, Your Honor. That would be your fondest wish? If the case is remanded for — with instructions to determine equitable tolling, and obviously a remand to the judge with instructions to the I.J. to accept an application and an opportunity to file this cancellation, then we're — You would agree that this family probably has as good a case as they're ever going to — as is ever going to come up? Yes, Your Honor. And just one last one. It is telling that they even obeyed the 120-day voluntary departure. They left within the time. I have nothing further if the Court has no questions. Thank you. Are you up here or down in Los Angeles? I'm in Portland, Your Honor. What? I'm in Portland. You're in Portland? Yes. My practice is here. So who's going to represent them if it goes back to the — It's very likely if they choose to retain me before the Immigration Court or the BIA, I will be handling the cancellation case as well. All right. Thank you.  The matter is submitted.
judges: Walter, Fletcher, Pregerson